UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Criminal No.
04-10075-PBS

UNITED STATES OF AMERICA

v.

JOHN CLARK

MEMORANDUM AND ORDER ON GOVERNMENT'S
MOTION FOR DETENTION

March 30, 2004

COHEN, M.

The above-named defendant was arrested on the basis of an indictment charging him with conspiracy to possession marihuana with intent to distribute and to distribute marihuana. On the occasion of his first appearance, the government moved for pretrial detention on the grounds of danger to the community and risk of flight. After appointment of counsel, the detention hearing was held on March 29, 2004.

I. A. Under the provisions of 18 U.S.C. 3142(c), "[t]he judicial officer may not impose a financial condition that results in the pretrial detention of the person." Thus, a defendant must be released under the provisions of 18 U.S.C. 3142(b) or (c), or detained pending trial under the provisions of 18 U.S.C. 3142(e). See 18 U.S.C. 3142(a).

Under ß3142(e), a defendant may be ordered detained pending trial if the

judicial officer finds by <u>clear and convincing</u> evidence, after a detention hearing under the provisions of ß3142(f), "...that no condition or combination of conditions (set forth under ß3142(b) or (c)) will reasonably assure the safety of any other person or the community....", or if the judicial officer finds by <u>a preponderance of</u> the evidence, after a detention hearing under the provisions of ß3142(f), "...that no condition or combination of conditions (set forth under ß3142(b) or (c)) will reasonably assure the appearance of the person as required ...".[1]

B.  The government is entitled to move for detention on grounds of danger to the community in a case that--

(1) involves a crime of violence within the meaning of ß3156(a)(4);

(2) involves an offense punishable by death or life imprisonment;

(3) involves an offense proscribed by the Controlled Substances Act or the Controlled Substances Import and Export Act for which the punishment authorized is imprisonment for ten years[2] or more; <u>or</u>

(4) involves <u>any</u> felony alleged to have been committed after the defendant has been convicted of two or more crimes of violence, or of a crime, the punishment for

---

[1]  The distinction between the former and latter are made clear by the very language of Section 3142(f). In the last paragraph of that section, Congress has stated there must be <u>clear and convincing</u> evidence to authorize pretrial detention when the question is whether any condition or combination of conditions "will reasonably assure the <u>safety of any other person and the community</u>...". (Last emphasis added).  By not requiring that same standard vis a vis an assessment of risk of flight, it is clear that a lesser standard--i.e., preponderance of the evidence-- applies.  And that is precisely the holding in this and other Circuits.  See e.g., <u>United States</u> v. <u>Patriarca</u>, 948 F.2d 789, 792-93 (1st Cir. 1991); <u>United States</u> v. <u>Jackson</u>, 823 F.2d 4, 5 (2d Cir. 1987); <u>United States</u> v. <u>Berrios-Berrios</u>, 791 F.2d 246, 250 (2d Cir.), <u>cert. dismissed</u>, 107 S.Ct. 562 (1986); <u>United States</u> v. <u>Chimurenga</u>, 760 F.2d 400, 405 (2d Cir. 1985); <u>United States</u> v. <u>Himler</u>, 797 F.2d 156, 161 (3d Cir. 1986).

[2]  The maximum penalty is that provided by the statute defining and/or providing the punishment for the substantive offense--not the sentence, or even the maximum sentence, which might otherwise be imposed under the federal Sentencing Guidelines. See <u>United States</u> v. <u>Moss</u>, __ F.2d __, No. 89-1859, Sl.Op. 8-12 (1st Cir. October 5, 1989).

which is death or life imprisonment, or a ten year [or more] offense under the Controlled Substances Act or the Controlled Substances Import and Export Act.

Additionally, the government or the court sua sponte may move for, or set, a detention hearing where there is a serious risk that the defendant will flee, or where there is a serious risk of obstruction of justice or threats to potential witnesses. See 18 U.S.C. 3142(f).

C.  In determining whether there are conditions of release which will reasonably assure the appearance of the person as required and the safety of any other person and the community, or whether pretrial detention is warranted, the judicial officer must take into account and weigh information concerning--

   (a) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;

   (b) the weight of the evidence against the accused;

   (c) the history and characteristics of the person, including--

   (i) his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

   (ii) whether, at the time of the current offense or arrest, he was on probation, on parole, or other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State or local law; and

   (d) the nature and seriousness of the danger to any other person or the community that would be posed by the person's release....

D.  Additionally, in making the determination, the judicial officer must consider two rebuttable presumptions, to wit:

First, a rebuttable presumption arises that no condition or combination of

conditions will reasonably assure the _safety_ of any other person or the community if the judicial officer finds (1) that the defendant has been convicted of a Federal crime of violence within the meaning of ß3156(a)(4) [or a state crime of violence within the meaning of ß3156(a)(4) if the offense would have been a _federal_ offense if a circumstance giving rise to federal jurisdiction had existed], a federal offense for which the maximum sentence is life imprisonment or death, a federal offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act--e.g., possession of cocaine, heroin, more than 1000 pounds of marihuana, with intent to distribute--, or the Controlled Substances Import and Export Act, _or_ any felony after the person has been convicted of two or more prior offenses as described immediately above, or two or more state or local offenses that would have been offenses described immediately above if circumstances giving rise to federal jurisdiction had existed; (2) that prior offense was committed while the person was on release pending trial; and (3) not more than five years has elapsed since the date of conviction for that prior offense, or his or her release for that prior offense, whichever is later.

_Second_, a rebuttable presumption arises that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person has committed an offense for which a maximum term of imprisonment of ten years or more is prescribed by the Controlled Substances Act or the Controlled Substances Import and Export Act _or_ an offense under the provisions of

18 U.S.C. 924(c)--i.e., use of or carrying a firearm during the commission of a federal offense which is a felony.

Insofar as the latter "presumption" is applicable in assessing "risk of flight", the burden remains with the government to establish "...that no condition or combination of conditions will reasonably assure the appearance of the person as required....". In striking the proper balance, this court must bear in mind Congress' findings that major drug offenders, as a class, pose a special danger of flight. The burden then rests on the defendant to come forward with "some evidence", United States v. Dillon, 938 F.2d 1412, 1416 (1st Cir. 1991), indicating that these general findings are not applicable to him for whatever reason advanced. At this point, this court must weigh all relevant factors [set forth under ß3142(g)], and then determine whether any condition or combination of conditions will reasonably assure the appearance of the [defendant] as required....".  The decision is an individualized one based on all relevant factors. See United States v. Jessup, 757 F.2d 378 (1st Cir. 1985).[3]

---

[3]   The presumption is always entitled to evidentiary weight, the amount of which, if at all, depends on the nature of the production by the defendant and the other factors set forth under Section 3142(d).  On later occasion, the United States Court of Appeals has observed, inter alia:

> Section 3142(e), however, only imposes a burden of production on a defendant.  The burden of persuasion remains with the government.  Nevertheless, even after a defendant has introduced some evidence to rebut the flight presumption, the presumption does not disappear, but retains evidentiary weight--the amount depending on how closely defendant's case resembles the congressional paradigm, Jessup, 757 F.2d at 387--to be considered along with other factors.

United States v. Palmer-Contreras, 835 F.2d 15, 17-18 (1st Cir. 1987)(per curiam); see also, United States v. Perez-Franco, 839 F.2d 867, 869-70 (1st Cir. 1988).  Even when a defendant produces "some evidence" in rebuttal, however--

> the presumption does not disappear. The burden of persuasion remains on the government and the rebutted presumption retains evidentiary weight. (Emphasis added).

United States v. Dillon, 938 F.2d 1412, 1416 (1st Cir. 1991)(Emphasis added). See also, United States v. Rodriquez, 950 F.2d 85, 88 (2d Cir. 1991).

Additionally, with respect to those presumptions which are triggered by a finding of probable cause that the accused committed the offense with which he is charged, the return of an indictment "fair upon its face" conclusively establishes the existence of probable cause, and triggers the applicability of the particular presumption.  United States v. Dillon, 938 F.2d 1412, 1416 (1st Cir. 1991); United States v. Vargas, 804 F.2d 157, 161 (1st Cir. 1986); United States v. Dominiguez, 783 F.2d 702 (7th Cir. 1986); United States v. Hurtado, 779 F.2d 1467, 1477-1479 (11th Cir. 1985); United States v. Contreras, 776 F.2d 51, 52, 54-55 (2d Cir. 1985); United States v. Hazime, 762 F.2d 34, 37 (6th Cir. 1985).

Moreover, one may be considered a danger to the community even in the absence of a finding by clear and convincing evidence that the accused will engage in physical violence. To the contrary, as noted by the Committee on the Judiciary (Report of the Committee on the Judiciary, United States Senate, on S. 215. 98th Congress, Report No. 98-147 (May 25, 1983)--

> The concept of defendant dangerousness is described throughout this chapter by the term "safety of any other person or the community." The reference to safety of any other person is intended to cover the situation in which the safety of a particular identifiable individual, perhaps a victim or witness, is of concern, while the language referring to the safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community. The Committee intends that the concern about safety be given a broader construction than merely danger of harm involving physical violence....The Committee also emphasizes that the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the "safety of any other person or the community." (Emphasis added; footnotes omitted).

See also, United States v. Hawkins, 617 F.2d 59 (5th Cir.), certiorari denied, 449 U.S.

962 (1980)(trafficking in controlled substances).[4][5]

Finally, the presumptions are applicable if the judicial officer finds probable cause to believe that the accused has committed one of the predicate offenses referred to above, even if the charge before the court does not involve that particular offense. See United States v. Bess, 678 F.Supp. 929, 934 (D.D.C. 1988); but see, United States v. Chimurenga, 760 F.2d 400 (2d Cir. 1985).[6]

II.  The defendant is 52 years old, having been born in Detroit, Michigan, in 1952.  He has been a Massachusetts resident since the 1960's.  He is married, and has two children.  His wife and children currently reside in Paris, France.  The defendant's father and brother reside in Williamsburg, Massachusetts.  The defendant reports that for the past two to four months, he was residing with a girlfriend in Brookline.  Before that, the defendant reported that he lived in Allston with another girlfriend.[7]  He reports

---

[4] A defendant may be ordered detained as a danger to the safety of another or to the community, however, only if the judicial officer determines that a detention hearing is appropriate under the provisions of 18 U.S.C. 3142(f)(1)(A) through 3142(f)(1)(D).  That is to say, even if a detention hearing is appropriate under Sections 3142(f)(2)(A) through 3142(f)(2)(B) [for risk of flight or danger of obstruction of justice or intimidation of witnesses], danger to the community is not a basis upon which a defendant may be ordered detained prior to trial, unless the government has moved under Section 3142(f)(1), and the judicial officer has determined that a hearing is appropriate under that latter section.  See United States v. Ploof, 851 F.2d 7 (1st Cir. 1988).

[5] Because of the nature of the charges in this case, the statutory presumptions are clearly applicable to this case.

[6] In this court's view, Judge Robinson's decision in Bess, supra, is the more persuasive one, the holding in Chimurenga, supra, notwithstanding.  The Bail Reform Act of 1984 was modeled, in large part, on the preventative detention statutes in effect for a number of years in the District of Columbia.  This court does not view the requirement that the offense giving rise to the statutory presumption be contained within the formal charge as consistent with the procedural framework imposed by the statute.  The Chimurenga court seems to suggest that the requirement is necessary to provide fair notice to the defendant that the statutory presumption will come into play.  But a formal charge, as such, is only one method by which to give that fair notice.  For example, in a complaint charging armed bank robbery in violation of the provisions of 18 U.S.C. 2113(d), the operative facts set forth in the affidavit in support of the charging complaint may well state that the defendant was using a firearm during the commission of the robbery.  That is clearly fair notice.

[7] His brother, however, was of the view that the defendant has been residing in Paris, France, for the past 3 to 4 years.

that he his self-employed as a musician/song writer, and, as such earns approximately $10,000 per year.  He reports no significant assets or liabilities.[8]

In 1992, a charge of operating to endanger was continued without a finding.  In 1998, he was convicted in Missouri on a charge of distributing controlled substances, and was sentence to imprisonment for five years, followed by supervised release of three years.

III.   The record evidence in this case, most of which is set forth in detail in the Affidavit of Special Agent Dennis Barton and admitted as Government's Exhibit 1 at the detention hearing,[9] shows that the defendant has been engaged in the large scale importation and/or distribution of large quantities of marihuana since April of 2000 - *i.e.*, less than a year (actually some six months) after he completed his probation on the Missouri drug conviction referred to above.  Each load of marihuana, consisting of some 7 to 110 pounds of marihuana, were driven from Arizona to Massachusetts in 18-wheelers and/or U-Haul rentals and/or a camper outfitted as a rock-and-roll tour bus.  Insofar as known to the government, the defendant last received some 400 pounds of marihuana in October of 2003.  In connection with this delivery, the defendant owed some $400,000.  Some of that $400,00 debt had been paid over the course of the past several months.  On the day of his arrest (March 24, 2004), he has some $208,000 in cash on his person which was intended to be used to pay off the remainder of that particular debt.

---

[8]   The defendant previously declared bankruptcy in 1997.

[9]   That affidavit was originally executed and filed in connection with applications for a number of search warrants before this court.

During the course of his participation in the distribution scheme, the defendant has used a half-dozen or so aliases, some to rent storage units, some to rent automobiles, and some to complete Fedex deliveries.  On some seventy-five (75) different occasions, the defendant sent Federal Express shipments to his wife in France.  Many of those shipments were made within a day or so of the defendant traveling to France to visit his wife - causing Special Agent Barton to believe that those shipments included monies and/or other negotiable instruments.  On at least four occasions, his current girlfriend shipped some $30,000 of his monies to his wife in Paris.  Another acquaintance of the defendant has also indicated that she has sent two other transfers of monies to defendantís wife in Paris.  Over the course of the past year, the defendant has traveled to Paris on some eight different occasions to be with his wife and children.

IV.   In the circumstances, this court finds and concludes that no condition or combination of conditions - short of pretrial detention - would reasonably assure the presence of the defendant and the safety of the community.

Given the nature of the charges, the statutory presumptions referred to above, pp. 3-7, clearly apply to this case.  And the defendant has proffered nothing which affects the weight of those presumptions.[10]

---

[10]   "[T]he presumption does not disappear. The burden of persuasion remains on the government and the rebutted presumption retains evidentiary weight." (Emphasis added).

United States v. Dillon, 938 F.2d 1412, 1416 (1st Cir. 1991)(Emphasis added). See also, United States v. Rodriquez , 950 F.2d 85, 88 (2d Cir. 1991).

   That does not mean, of course, that the presumption is conclusive.  The question is whether the defendant has produced some evidence to show ìthat what is true in general is not true in [his] case....î.   Jessup, supra, at 384.

To the contrary, the record evidence complements those statutory presumptions. On the matter of danger to the community, the record evidence shows that the defendant, just six months after completing his probation on another drug charge, immediately returned to his ply his chosen trade in the importation and distribution of large quantities of marihuana. Indeed, the defendant in this case is a classic fit of the large scale trafficker in controlled substances giving substance to the Congressional paradigm. *See* note 5, *supra*.

Even more so on the matter of flight. The defendant, upon conviction (and the strength of the evidence auguring towards conviction is, based on the current record, strong, indeed), faces a <u>mandatory</u> <u>minimum</u> sentence of imprisonment for five years, and, most likely, given the amount of marihuana involved, a guideline sentence of some 135 to 158 months. The defendant, who has used a half-dozen, more or less, aliases in order to disguise his doings and identity, has virtually no roots in the Greater Boston area (no employment of any significance, no assets of any significance), and the strongest of roots - his wife and children - are in Paris, France.[11] The strength of those roots, and, indeed, the potential safe harbor of those roots, is clearly established by reason of the fact that the defendant has consistently caused his monies to be transmitted by others to his wife in France, and has caused other suspicious documents (perhaps other negotiable instruments) to be transmitted to her over the

---

[11] The defendant states that they are separated, although not legally separated. The record evidence, however, shows that the defendant is constantly flying to Paris to be with his wife and children.

past several months, and has consistently traveled to Paris to be at their side.[12]  In these circumstances, the government has shown by a preponderance of the evidence that no condition or combination of conditions, short of pretrial detention, would reasonably assure the presence of the defendant at trial.

    V.  IT IS ACCORDINGLY ORDERED that the defendant be DETAINED pending trial, and it is further Ordered--

    (1) That the defendant be committed to the custody of the Attorney General for confinement in a correction facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

    (2) That the defendant be afforded a reasonable opportunity for private consultation with counsel; and

    (3) On order of a court of the United States or on request by an attorney for the government, the person in charge of the corrections facility in which the defendant is detained and confined deliver the defendant to an authorized Deputy United States Marshal for the purpose of any appearance in connection with a court proceeding.

_____
UNITED STATES MAGISTRATE JUDGE

---

[12]  So much so that the defendantís brother was of the belief that the defendant permanently resided in Paris.